Eva Beattie *v.* Harold G. Parkhurst.

Special Term at Rutland, November, 1932.

Present: Powers, C. J., Slack, Moulton, Thompson, and Graham, JJ.

Opinion filed January 4, 1933.

*Clayton H. Kinney* for the defendant.

*Jones & Jones* for the plaintiff.

SLACK, J. The plaintiff seeks to recover for personal injuries suffered by her and for damage to her automobile caused by defendant's negligence, which resulted in his automobile colliding with the automobile of the plaintiff at the intersection of West and Wales streets in the city of Rutland between three and four o'clock in the morning of January 1, 1932. The plaintiff had a verdict and judgment below, and the case is here on defendant's exceptions.

The exceptions briefed are to the refusal of the court to direct a verdict for defendant on the ground that plaintiff had failed to show freedom from contributory negligence, and to the overruling of his motion to set aside the verdict.

Following is a picture of the locus: West street runs nearly due east and west. Wales street runs north and south and intersects West street. Church street is a continuation north of Wales street from the north side of West street. At the intersection, West street is forty-six feet wide, Wales street is thirty feet wide, and Church street is twenty-nine feet wide. The streets are practically level at the intersections, but beginning just east of that point West street ascends to the east on a seven or eight percent grade for at least seven hundred feet. West street is visible that distance from the intersection, and south on Wales street to the north side of a building called the "harness shop," which stands on the east side of Wales street eleven feet south of the intersection.

The evidence, viewed in the light most favorable to the plaintiff, as it must be, tended to show that she drove her car, which was a Studebaker coupe, north along Wales street into the intersection, headed for Church street, and had reached a point where the front end of her car was in Church street when it was hit by defendant's car which was being driven west on West street; that just south of the harness shop she slowed her car down to five or seven miles an hour, and put it into second gear; that she increased its speed from that point so that it was

traveling from fifteen to twenty miles an hour at the place of collision; that just before entering the intersection she sounded the horn and looked in both directions on West street; that she looked east on that street as far as Elm street, a distance of two hundred and ten feet; that she "didn't look, didn't notice anything above Elm street"; that she did not see defendant's car before the collision; that an occupant of her car saw defendant's car just before the collision when it was thirty to thirty-five feet "up the road coming down," and that it was then traveling fifty miles an hour; that the defendant slid the wheels of his car, or so applied the brakes that the wheels made distinct black marks in the surface of West street, which is asphalt and crushed stone, and was dry at the time; that the mark made by the left wheel of his car extended east on West street sixty-three feet from the point of collision, and that made by the right wheel extended in the same direction seventy-eight feet from the point of collision. It appeared that the danger signal at the intersection displayed "Caution" for all of said streets at that time.

It further appeared that there were three persons other than the plaintiff in her car at the time of the collision; that defendant's car struck her car back of the door on the right side with such force that it changed her car end for end so that it was headed south after the impact; that one of the occupants of her car was thrown out into Church street, and another was thrown clear across the sidewalk on the west side of Church street. It also appeared that the frame, front axle, front wheel, steering housing and spindle arm of defendant's car were sprung, and that it received many other lesser injuries.

When the plaintiff's car stopped after the collision it was on the west side of Church street, thirty-six feet north of the north side of West street, headed south and its wheels were locked. No claim was made that it had been moved by anyone.

It is true that, in answer to questions propounded by defendant's attorney, plaintiff testified, in substance, that after she passed the north side of the harness shop she had an unobstructed view of West street east approximately seven hundred feet; that her eyesight was good; that there was no reason why she could not have seen a car approaching the intersection from the east; that she did not see defendant's car, nor its headlights, nor the reflection of them, and that if she had seen them she

could have stopped her car before it reached the center of West street, and other evidence of the defendant tended to show that his car was only a short distance from the intersection, and in plain view of the plaintiff, when she entered the intersection, and that its headlights were on.

 It is true, too, as defendant contends, that to free herself from the imputation of contributory negligence it was necessary for the plaintiff, in the circumstances, to look for approaching cars, and look effectively. This means that she was required to look with the degree of care that a careful and prudent person would have exercised in like circumstances, nothing more. And it will be presumed that she saw whatever was in range of her vision, if she looked. In other words, it will not avail her to say that she looked and did not see what she could not have helped seeing if she looked. *Harrington* v. *Rutland R. R.*, 89 Vt. 112, 94 Atl. 431; *Carter* v. *Central Vt. R. R. Co.*, 72 Vt. 190, 47 Atl. 797; *Labelle* v. *Central Vt. R. R. Co.*, 87 Vt. 87, 88 Atl. 517; *Wentworth* v. *Town of Waterbury*, 90 Vt. 60, 96 Atl. 334.

 This does not mean, however, that under no circumstances could the plaintiff enter the intersection, even though she knew defendant's car was approaching, without being guilty of contributory negligence.

While the defendant had such advantage as the law gave him by reason of the fact that he was approaching the intersection from the favored direction (see Acts 1925, No. 70, § 68, subd. II), this did not necessarily give him the right of way over the plaintiff. *Lachance, Admr.* v. *Myers*, 98 Vt. 498, 129 Atl. 172, 174; *Jasmin* v. *Parker*, 102 Vt. 405, 148 Atl. 874. His right of precedence depended upon his distance from the intersection, his speed, etc. It is said in the Lachance Case, ''The right of precedence at a crossing given by the statute has no proper application except where the vehicles on intersecting streets approach the crossing so nearly at the same time and at such rate of speed that if both proceed, each without regard to the other, a collision or interference between them is reasonably to be apprehended.'' And speaking respecting the rights of one approaching the intersection from the disfavored direction it is said, ''If there is no one approaching the crossing upon the other street within such distance as reasonably to indicate danger of interference or collision, he is under no obliga-

tion to stop or wait, but may proceed to use the crossing as a matter of right.''

The trouble with the defendant's position is that it is predicated upon evidence that makes most strongly against the plaintiff rather than on that which is most favorable to her.

The plaintiff testified, as we have seen, that before entering the intersection she looked east on West street as far as Elm street, two hundred and ten feet, and did not see defendant's car. If this was true, and her credibility was for the jury, it manifestly cannot be said as a matter of law that she was guilty of contributory negligence in attempting to cross the intersection as she did. The evidence was such that the jury might well have found that defendant's car was not between Elm street and the intersection when plaintiff looked. The result of the impact of the cars indicated that his car was traveling at a rate of speed that would have required very little time to cover the distance between Elm street and the point of collision: and the distances, and speed of the two cars, testified to by different witnesses, although in most respects mere estimates, tended to show that at the speed plaintiff crossed West street she must have entered the intersection more than two seconds before the collision, and that at the speed of defendant's car thirty-five feet from the point of collision it would have taken it less than three seconds to cover the distance from Elm street to the point of collision, without considering the probability that his speed was greater the first one hundred and forty feet of that distance, before he applied his brakes, than it was when his car was discovered, after it had traveled more than forty feet with the brakes on. In the circumstances, defendant's motion for a directed verdict was properly denied.

What has been said disposes of the questions raised under the second motion.

*Judgment affirmed.*